**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| NORA HRUSKA, individually, and on behalf of all others similarly situated, | |
| Plaintiff, | |
| v. | Case No. 1:20-cv-01143 |
| POWER HOME REMODELING GROUP, LLC, | |
| Defendant. | |

**FIRST AMENDED CLASS ACTION COMPLAINT**

**NOW COMES** Plaintiff, NORA HRUSKA ("Plaintiff"), individually, and on behalf of all others similarly situated, by and through her undersigned counsel, complaining of Defendant, POWER HOME REMODELING GROUP, LLC, as follows:

**NATURE OF THE ACTION**

1.      Plaintiff brings this class action seeking redress for Defendant's violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA") and the Illinois Automatic Telephone Dialers Act, 815 ILCS § 305/1 *et seq.* ("ATDA").

**JURISDICTION AND VENUE**

2.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

3.      This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

4.      Venue in this district is proper under 28 U.S.C. § 1391(b)(2) because Plaintiff received unlawful prerecorded messages on her cellular phone number while residing in this judicial district.

1

5. Further, in causing unlawful pre-recorded messages to be played on Plaintiff's cellular phone number, Defendant utilized an 847 area code which is a Northern District of Illinois based area code.

## PARTIES

6. Plaintiff NORA HRUSKA is a citizen of the State of Illinois and resides in Worth, Illinois.

7. Defendant POWER HOME ROMEDELING GROUP, LLC is a limited liability company organized under the laws of the State of Delaware. Defendant maintains its headquarters in Chester, Pennsylvania. Defendant also maintains a registered agent in Illinois, namely Illinois Corporation Service C, located at 801 Adlai Stevenson Drive, Springfield, Illinois 62703.

8. Defendant acted through its officers, directors, vice-principals, agents, servants, or employees at all times relevant to the instant action and any such act was done with complete authorization, ratification, or approval of the Defendant or was done in the routine normal course and scope of employment of Defendant's officers, directors, vice-principals, agents, servants, or employees.

## GENERAL ALLEGATIONS

9. Section 227(b)(A)(iii) of the TCPA prohibits initiating a call using an artificial or prerecorded message without the prior express consent of the called party.

10. Defendant is a home remodeling company that operates in several states throughout the United States.

11. Defendant uses prerecorded voice messages to contact individuals *en masse* to promote Defendant's home remodeling services.

12.     Upon information and belief, Defendant obtains phone numbers of individual persons ("Potential Consumers") by purchasing lists that contain numbers associated with Potential Consumers.  By purchasing the phone numbers of Potential Consumers, Defendant lacks the required pre-existing consent to call Potential Consumers by the methods identified in Section 227(b)(A)(iii) of the TCPA.

13.     Defendant placed unsolicited phone calls to Plaintiff and Potential Consumers without ever obtaining their consent to call and without ever having had a prior relationship with them.

14.     Without the consent of Plaintiff and Potential Consumers, Defendant made thousands of calls using prerecorded voice messages, without ever obtaining consent from Plaintiff and Potential Consumers - or *without* ever having a prior relationship with them.

15.     Even in instances where Potential Consumers may have initially consented to receiving calls using prerecorded voice messages, in many or most of those instances, Defendant continued to call Potential Consumers using prerecorded voice messages after they requested that the calls stop.

16.     In doing so, Defendant violated Section 227(b) of the TCPA which prohibits using artificial or prerecorded messages without the prior express consent of the called party.

17.     The Federal Communications Commission ("FCC") has held that a [business] on whose behalf an autodialed or prerecorded message is made to a wireless numbers bears responsibility for any violation of the Commission's rules.*" In re Rules and Regulations Implementing the Telephone Consumer Protection Act, Declaratory Ruling on Motion by ACA International for Reconsideration,* 23 FCC Rcd. 559, 565, ¶ 10 (Jan. 4, 2008); *Birchmeier v. Caribbean Cruise Line, Inc.*, 2012 WL 7062748 (N.D. Ill. Dec. 31, 2012).

18.     As such, Defendant can be liable under the TCPA for any non-consensual prerecorded voice messages made on its behalf, even if Defendant did not directly place the call that resulted in the playing of a prerecorded voice message.  Rather, under the law, Defendant is deemed to have initiated the call itself.

19.     Similarly, Section 30(b) of the ATDA states that it is a violation of the act to play a prerecorded message placed by an autodialer without the consent of the called party.

20.     On information and belief, Defendant uses an "autodialer" as this term is defined by Section 5(a) of the ATDA because Defendant's autodialer is capable of storing telephone numbers of Potential Consumers and is programmed to sequentially or randomly access the stored telephone numbers in order to automatically connect the telephone numbers of the Potential Consumers with unsolicited prerecorded messages.

## FACTUAL ALLEGATIONS AS TO PLAINTIFF HRUSKA

21.     At all times relevant, Plaintiff was the sole operator, possessor, and subscriber of the cellular telephone number ending in 6059.

22.     Plaintiff has been on the national do-not-call registry since May 4, 2008.

23.     At all times relevant, Plaintiff's number ending in 6059 was assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

24.     At all times relevant, Plaintiff was financially responsible for her cellular telephone equipment and services.

25.     In or about September, 2019, Defendant began placing unsolicited calls to Plaintiff's cellular phone from the phone number (847) 916-5363.

26.     Upon answering one of Defendant's first few calls, Plaintiff noted a distinct pause, which lasted for approximately three seconds, before being connected to a female representative.

4

27.    The pause, lasting approximately three seconds, is indicative of the use of an auto dialer.

28.    Defendant's representative informed Plaintiff that Defendant was calling to offer home remodeling services to Plaintiff.

29.    Plaintiff advised Defendant that she was not interested and requested that Plaintiff be taken off Defendant's call list.

30.    Despite Plaintiff's request, Defendant continued to call Plaintiff.

31.    In or about September, 2019, perhaps a day or two later, Defendant called Plaintiff again.  Again, Plaintiff again noted a distinct pause, lasting about three seconds before being connected to a female representative.

32.    Defendants' representative again informed Plaintiff that Defendant was calling to offer home remodeling services. Plaintiff again informed Defendant that she was not interested and requested that the calls stop.

33.    In or about September, 2019, perhaps a few days later, Defendant called Plaintiff again.  Again, Plaintiff noted the three-second pause, however this time Plaintiff was greeted by an automated prerecorded message stating: "Please hold to be connected to the next available representative . . . ."

34.    While Plaintiff had already previously asked for the calls to stop, Plaintiff continued to hold to connect to a live person so that she can again ask for the calls to stop.

35.    After holding, the call connected to a live representative.

36.    Again Defendant's representative informed Plaintiff that Defendant was calling to offer home services. Frustrated, Plaintiff informed Defendant that she is not interested in

Defendant's services, and that she has repeated asked for the calls to stop and for Plaintiff to be taken off Defendant's calling list.

37.     Defendant's representative responded that Plaintiff went on a website and consented to receiving calls.

38.     Plaintiff responded that she never went on any such website, that she has no idea who Defendant is, and she is not interested in Defendant's services.

39.     Defendant's representative replied by informing Plaintiff that it is a home remodeling company based in Pennsylvania with an office in Northern Illinois.

40.     Plaintiff stated "Whatever your selling, I'm not buying" and again, asked for the calls to stop.

41.     Despite Plaintiff's requests for the calls to stop, Defendant kept calling Plaintiff without her consent to be called with prerecorded messages.

42.     On or about September, 2019, or early October, 2019, Defendant called Plaintiff again.

43.     Plaintiff noted the three-second pause and was then greeted by an automated prerecorded message which again stated: "Please hold to be connected to the next available representative . . . ."

44.     Again, Plaintiff waited for a representative. Once connected, Plaintiff expressed her frustrations with the barrage of calls and again asked for the calls to stop.

45.     In one or more of the above conversations, the Plaintiff confirmed to Defendant's representative that Defendant was in fact speaking to Nora Hruska.

6

46.     Some examples of the dates in which Defendant called Plaintiff include, but are not limited to, October 14, 2019, October 15, 2019, October 16, 2019, November 20, 2019, November 27, 2019, December 2, 2019, January 29, 2020,  and February 3, 2020.

47.     To the best of Plaintiff's recollection, Defendant played or left a prerecorded message when it called Plaintiff on October 14, 2019.

48.     To the best of Plaintiff's recollection, Defendant played or left a prerecorded message when it called Plaintiff on October 15, 2019.

49.     To the best of Plaintiff's recollection, Defendant played or left a prerecorded message when it called Plaintiff on October 16, 2019.

50.     To the best of Plaintiff's recollection, Defendant played or left a prerecorded message when it called Plaintiff on November 20, 2019.

51.     To the best of Plaintiff's recollection, Defendant played or left a prerecorded message when it called Plaintiff on November 27, 2019.

52.     To the best of Plaintiff's recollection, Defendant played or left a prerecorded message when it called Plaintiff on December 2, 2019.

53.     To the best of Plaintiff's recollection, Defendant played or left a prerecorded message when it called Plaintiff on January 29, 2020.

54.     To the best of Plaintiff's recollection, Defendant played or left a prerecorded message when it called Plaintiff on and February 3, 2020.

55.     On February 11, 2020, at 12:52 p.m. central standard time, Plaintiff received yet another call from Defendant. Plaintiff answered this call and said "hello, hello." After an approximately three-second pause, Plaintiff heard a male voice state, "Hi Nora."  Plaintiff then disconnected the call.

56.     On February 17, 2020, frustrated with the barrage of calls, Plaintiff filed the instant lawsuit.

57.     Despite filing this lawsuit, Defendant *still* continued to call Plaintiff.

58.     Specifically, Defendant called Plaintiff on August 5, 2020.

59.     To the best of Plaintiff's recollection, Defendant's call on this date utilized a prerecorded message.

60.     As set forth above, Defendant used prerecorded messages in many or most of the calls made to Plaintiff.

61.     At no time did Plaintiff provide Defendant with express consent to place calls to her cellular phone.

62.     In the calls that Plaintiff did not answer, Defendant would leave prerecorded voicemails on the voicemail box of Plaintiff's cellular phone.

63.     On many occasions, Defendant called Plaintiff multiple times on any given day and played or left more than one prerecorded message.

64.     Defendant placed at least twenty-five (25) calls to Plaintiff's cellular phone ending in 6059 from approximately September, 2019 to the present.

65.     Defendant placed at least twenty-five (25) calls to Plaintiff's cellular phone ending in 6059 from approximately September, 2019 to the present utilizing an artificial or prerecorded voice or prerecorded message.

66.     Defendant placed at least twenty-five (25) calls to Plaintiff's cellular phone ending in 6059 from approximately September, 2019 to the present utilizing an artificial or prerecorded voice or prerecorded message without her consent.

8

67. Defendant placed at least twenty-five (25) calls to Plaintiff's cellular phone ending in 6059 from approximately September, 2019 to the present utilizing an artificial or prerecorded voice or prerecorded message after Plaintiff told Defendant to stop calling her.

68. Defendant placed at least fifty (50) calls to Plaintiff's cellular phone ending in 6059 from approximately September, 2019 to the present.

69. Defendant placed at least fifty (50) calls to Plaintiff's cellular phone ending in 6059 from approximately September, 2019 to the present utilizing an artificial or prerecorded voice or prerecorded message.

70. Defendant placed at least fifty (50) calls to Plaintiff's cellular phone ending in 6059 from approximately September, 2019 to the present utilizing an artificial or prerecorded voice or prerecorded message without her consent.

71. Defendant placed at least fifty (50) calls to Plaintiff's cellular phone ending in 6059 from approximately September, 2019 to the present utilizing an artificial or prerecorded voice or prerecorded message after Plaintiff told Defendant to stop calling her.

72. Since Defendant maintains an office in Northern Illinois and because it was calling Plaintiff from an 847 area code (specific to Northern Illinois), upon information and belief, Defendant was calling Plaintiff with an autodialer from within the State of Illinois.

73. Defendant's calls to Plaintiff violated 47 U.S.C. §227(b)(1)(A)(iii) because Plaintiff did not consent to receive prerecorded or artificial voice messages from Defendant and because Plaintiff told Defendant's representatives to stop calling her and Defendant continued to call her with prerecorded messages.

74. Plaintiff believes that Defendant calls, and continues to call, thousands of cellular phone customers to market its products without consent as mandated by the TCPA and ATDA.

75.     The following online reviews certainly support Plaintiff's beliefs:

-    A June 19, 2020 Better Business Bureau ("BBB") complaint states:

     I have told Power Home Remodeling multiple times to not come on my property,
     I am not interested in their services. Today (6/19/20), a rep comes to my door,
     disobeying my wishes. I called the local office in Southfield, and they confirmed
     I am on that list. I later found out the police will only cite trespassing if they
     actually catch them on my property.

-    A June 29, 2019 response from Defendant on the BBB website states:

     Good Morning,
     As previously stated, Power will no longer contact you. Power utilizes two
     methods to contact current and prospective customers, a dialing campaign and
     customer development in the field. By adding your address to our do-not-knock
     list and flagging your phone numbers in our dialer, we've eliminated any
     possibility of speaking with you either of these ways. We have no other methods
     of contact. This correspondence and our previous two correspondence should
     serve as official notice of both actions having taken place.

-    A June 4, 2020 BBB complaint states:

     Having employees perform unwanted door to door solicitations. I never want to
     be disturbed at my home for any reason by any company, group, etc. I have
     submitted a online form to their website on the same day as the incident occurred.
     I consider this to be harassment.

-    A March 16, 2020 BBB complaint states:

     Door to door salesman coming around at dinner time. They completely ignored
     the posted "no soliciting" signs.

-    A February 11, 2020 BBB complaint states:

     A door to door sales man came to my door offering to provide a free estimate, I
     said sure why not. They came and provided me estimates on everything in which
     we kindly declined. The following day they call me requesting me to do a survey
     and I kindly declined again. Now, they call me nearly every day from ###-###-
     ####, even after blocking their number! PLEASE STOP CALLING ME, YOU
     ARE HARASSING ME. I have received 16 calls in October, 16 calls in
     November, 6 calls in December, 10 calls in January, and 3 calls so far in
     February.

-    A March 10, 2020 BBB complaint states:

Despite the "no soliciting" sign at the entrance of our neighborhood, this company consistently has people going door to door trying to get people to sign up for free estimates claiming that they're doing work in the neighborhood. Additionally, at our last neighborhood meeting we found that no one in the neighborhood has ever used this company.

- A November 22, 2019 BBB complaint states:

This company keeps harassing my husband and I phones, both of our cells have their number block, but they keep calling at least 2 to 4 times a week. We told them we are not interested in their services at this time and they are still contacting us. This has been going on for over a month now.

- A June 12, 2019, BBB complaint states:

"I have asked this company to stop soliciting at my house because they do not know when to stop. I asked them to stop calling me and they continue to call. I also ask them to take me off of their list and yet they continue to knock at my door. Every salesman says the same thing to me that "they didn't know and only wanted to see if I want a free quote. Even after I ask them to leave they will continue to push."

- A February 2, 2019, BBB complaint states:

"Calls house phone (###-###-####) several times a day. I have answered twice and told a man I'm not interested. The company continues to call - 12 times in the last 5 days. This has been going on for several weeks."

- A July 22, 2018, BBB complaint states:

"We receive sales calls from************ Caller ID: *********** almost daily despite the fact that we are on the Do Not Call registry and have told them this numerous times and requested they stop calling. On 7/14/18 we received 5 calls from them within the space of an hour. Three of them were on our landline: 7/14/18 10:18am 7/14/18 10:42am 7/14/1811:04am When we answered the last call a recording said to please hold on while they transfer us to confirm our appointment. Two of the other calls were on our cell phone. Please help us stop these nuisance calls."

- A Yelp review on August 11, 2017, states:

"Terrible experience and now they will not stop calling. On the verge of filing harassment charges after telling them to stop calling many times. I had to call block them. Ugh!"

11

- A Yelp review on December 20, 2016, states, in part:

    "I made the mistake of giving them my number when I told one of their sales reps Id let them know about a possible roof replacement. Now they are non stop calling for 3 months and counting!!"

76. Many or most of Defendant's calls to Plaintiff used prerecorded messages.

77. Upon information and belief, Defendant used an autodialer as defined by the ATDA for all of its outbound calls.

78. Upon information and belief, Defendant records its outbound calls.

79. Defendant's unsolicited prerecorded calls have caused Plaintiff actual harm, including but not limited to, reduced device storage, invasion of privacy, aggravation that accompanies unsolicited robocalls, intrusion upon and occupation of Plaintiff's cellular telephone, temporary loss of use of Plaintiff's cellular phone, loss of concentration, mental anguish, nuisance, and lost time.

80. Plaintiff, in order to redress injuries caused by Defendant's violations of the TCPA and ATDA, on behalf of herself and classes of similarly situated individuals, brings the instant action.

81. On behalf of the Plaintiff Classes, Plaintiff also seeks an injunction requiring Defendant to cease sending prerecorded messages without consent and an award of statutory damages to the class members, together with costs and reasonable attorney fees as provided by the ATDA.

## CLASS ACTION ALLEGATIONS

82. All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

12

83. Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and 23(b)(3) on behalf four Classes, defined as follows:

> Since January 1, 2017, all persons within the United States to whose cellular phone number Defendant placed calls using an artificial or prerecorded voice without the prior express consent of the called party.
>
> ("TCPA Prerecorded Messages Class")
>
> Since January 1, 2017, all persons within the United States to whose cellular phone number Defendant placed calls using an artificial or prerecorded voice after the called party requested the calls to stop.
>
> ("TCPA Cease Calling/Prerecorded Messages Class")
>
> Since January 1, 2017, all persons within Illinois to whose cellular phone number Defendant placed calls and played a prerecorded message, placed by an autodialer (as defined by the ATDA), without the consent of the called party.
>
> ("ATDA Prerecorded Messages Class")
>
> Since January 1, 2017, all persons within Illinois to whose cellular phone number Defendant placed calls and played a prerecorded message, placed by an autodialer (as defined by the ATDA), after the called party requested the calls to stop.
>
> ("ATDA Cease Calling/Prerecorded Messages Class")

84. The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's counsel and Defendant's counsel; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released.

85.     This suit seeks damages, statutory penalties, and injunctive relief for recovery of economic injury on behalf of the Classes.

86.     Plaintiff reserves the right to expand the Classes' definitions to seek recovery on behalf of additional persons as facts are learned in further investigation and discovery.

87.     Plaintiff and members of the Classes were harmed as follows:  Defendant, either directly or through agents, illegally contacted Plaintiff and the Class members via their cellular telephone by using an artificial or prerecorded voice, causing Plaintiff and the members of the Classes, to incur cellular telephone charges or reduce cellular phone time for which Plaintiff and the members of the Classes previously paid, and invading the privacy of Plaintiff and the members of the Classes.

### A.  Numerosity

88.     The exact number of members of the Classes are unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable.

89.     Upon information and belief, Defendant made phone calls to thousands of consumers who fall into the definition of the Classes.

90.     Members of the Classes can be objectively identified from records of Defendant or its agents.

### B.  Commonality and Predominance

91.     There are many questions of law and fact common to the claims of Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes.  Common questions for the Classes include, but are not necessarily limited to the following:

        a.   Whether Defendant made unsolicited calls;

14

b. Whether Defendant uses an artificial or prerecorded voice or prerecorded message;

c. Whether Defendant had prior express consent to contact Plaintiff and the members of the Classes when it placed phone calls to their cellular phones using an artificial or prerecorded voice or prerecorded message;

d. Whether Defendant continued to call Plaintiff and the members of the Classes on their cellular phones after Plaintiff and the members of the Classes requested the calls to stop;

c. Whether Plaintiff and the Classes were damaged, and the extent of damages for such violations.

**C. Typicality**

92. Plaintiff's claims are typical of members of the Classes because Plaintiff and members of the Classes did not consent to receive pre-recorded messages from Defendant and they are all entitled to statutory damages as result of Defendant's misconduct.

**D. Superiority and Manageability**

93. This case is also appropriate for class certification as class proceedings are superior to all other available methods for the efficient and fair adjudication of this controversy.

94. The damages suffered by the individual members of the Classes will likely be relatively small, especially given the burden and expense required for individual prosecution.

95. By contrast, a class action provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of effort, expense, and time will be fostered and uniformity of decisions ensured.

**E. Adequate Representation**

96. Plaintiff will adequately and fairly represent and protect the interests of the Classes.

97. Plaintiff has no interests antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiff.

98.     Plaintiff has retained competent and experienced counsel who are well versed in consumer class action litigation.

99.     Attorney James C. Vlahakis is an experienced consumer class action litigator. For example, Mr. Vlahakis was appointed to the Steering Committee in a nationwide class action against, *In Re: Apple Inc. Device Performance Litigation*, 18-md-02827 (N.D. Cal.) (Dkt. Entry no. 99) where the parties proposed and obtained preliminary approval of a $310 to $500 million dollar settlement on May 15, 2020 (Dkts. 415-16, 420, 429).

100.    Further, as a former partner of Hinshaw & Culbertson, LLP, Mr. Vlahakis has defended over a hundred consumer-based claims since 1998. For example, as a former defense attorney, Mr. Vlahakis has worked with opposing counsel to obtain court approval of various class action settlements. *See, e.g., Prater v. Medicredit, Inc.*, 2014-cv-0159, 2015 U.S. Dist. LEXIS 167215 (E.D. Mo. Dec. 7, 2015) ($6.3 million dollar TCPA based automated dialing system wrong party settlement).

101.    Further, Mr. Vlahakis has successfully *defeated* TCPA class certification bids which has allowed Mr. Vlahakis to recognize and avoid the defenses inherent in class actions. *See, e.g., Jamison v. First Credit Servs.*, 290 F.R.D. 92 (N.D. Ill. Mar. 28, 2013) (defeating a TCPA certification motion); *Pesce v. First Credit Servs.*, 2012 U.S. Dist. LEXIS 188745 (N.D. Ill. June 6, 2012)(decertifying a previously certified class action).

102.    Mr. Vlahakis has successfully litigated appeals before the Seventh Circuit Court of Appeals. For example, on January 21, 2020, the Seventh Circuit in *Preston v. Midland Credit Mgmt.*, 948 F.3d 772 (7th Cir. 2020) reversed a district court's order granting a motion to dismiss a putative class action and held that Midland Credit violated 15 U.S.C. 1692f(8) where Midland

16

Credit Mgmt. used the words "**TIME SENSITIVE DOCUMENT**" on an envelope that is used to send a collection letter.

103.    Lastly, Mr. Vlahakis is well-versed in proceedings before the Federal Communication Commission ("FCC"). For example, the FCC issued favorable declaratory relief for one of Mr. Vlahakis' clients, Crown Mortgage Company *See*, FCC's Order of October 30, 2014, FCC 14-164, in CG Docket Nos. 02-278 and 05-338. The FCC's Order is located at https://docs.fcc.gov/public/attachments/FCC-14-164A1.pdf+&cd=1&hl=en&ct=clnk&gl=us

## CLAIMS FOR RELIEF

### COUNT I
### Violations of TCPA, 47 U.S.C. § 227(b)(1)(A)(iii)
### (On behalf of Plaintiff and the Members of the TCPA Prerecorded Messages Class)

104.    All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

105.    Defendant called Plaintiff's cellular phone no less than fifty (50) times between September 2020 and after the filing of this lawsuit using an artificial or prerecorded voice without Plaintiff's consent in violation of 47 U.S.C. §227(b)(1)(A)(iii).

106.    As alleged above, Defendant placed numerous calls to Plaintiff and the TCPA Prerecorded Class Members' cellular phones utilizing an artificial or prerecorded voice without the prior consent of the Plaintiff or the TCPA Prerecorded Messages Class Members in violation of 47 U.S.C. §227 (b)(1)(A)(iii).

107.    As a result of Defendant's violations of the TCPA, Plaintiff and the members of the TCPA Prerecorded Messages Class are entitled to receive $500.00 in damages for each such violation.

108.     As a result of Defendant's knowing and willful violations of the TCPA, Plaintiff and the members of the TCPA Prerecorded Messages Class are entitled to receive up to $1,500.00 in treble damages for each such violation.

109.     Plaintiff and the TCPA Prerecorded Messages Class Members are also entitled to, and seek, injunctive relief prohibiting the aforementioned conduct in the future.

**WHEREFORE**, Plaintiff, on behalf of herself and the members of the TCPA Prerecorded Messages Class, requests the following relief:

A.     An order granting certification of the proposed class, including the designation of Plaintiff as the named representative, and the appointment of counsel of record as Class Counsel;

B.     An order finding that Defendant violated the TCPA;

C.     An order enjoining Defendant from placing or causing to place further violating calls to consumers;

D.     An award  of $500.00 in damages to Plaintiff and the members of the TCPA Prerecorded Messages Class for each such violation;

E.     An award of treble damages up to $1,500.00 to Plaintiff and the members of the TCPA Prerecorded Messages Class for each such violation;

F.     An award of allowable costs in this action;

G.     An award of such other relief as this Court deems just and proper.

**COUNT II**
**Violations of TCPA, 47 U.S.C. § 227(b)(1)(A)(iii)**
**(On behalf of Plaintiff and the Members of the TCPA Cease Calling/Prerecorded Messages Class)**

110.     All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

111.     Defendant placed numerous calls to Plaintiff and the TCPA Cease Calling/Prerecorded Messages Class's cellular phone using an artificial or prerecorded voice, after

Plaintiff and the TCPA Cease Calling/Prerecorded Messages Class Members requested that the calls stop, and in doing so, Defendant violated 47 U.S.C. §227 (b)(1)(A)(iii).

112.    As a result of Defendant's violations of the TCPA, Plaintiff and the members of the TCPA Cease Calling/Prerecorded Messages Class are entitled to receive $500.00 in damages for each such violation.

113.    As a result of Defendant's knowing and willful violations of the TCPA, Plaintiff and the members of the TCPA Cease Calling/Prerecorded Messages Class are entitled to receive up to $1,500.00 in treble damages for each such violation.

114.    Plaintiff and the TCPA Cease Calling/Prerecorded Messages Class Members are also entitled to, and seek, injunctive relief prohibiting the aforementioned conduct in the future.

**WHEREFORE**, Plaintiff, on behalf of herself and the members of the TCPA Prerecorded Messages Class, requests the following relief:

A.    An order granting certification of the proposed class, including the designation of Plaintiff as the named representative, and the appointment of counsel of record as Class Counsel;

B.    An order finding that Defendant violated the TCPA;

C.    An order enjoining Defendant from placing or causing to place further violating calls to consumers;

D.    An award of $500.00 in damages to Plaintiff and the members of the TCPA Cease Calling/Prerecorded Messages Class for each such violation;

E.    An award of treble damages up to $1,500.00 to Plaintiff and the members of the TCPA Cease Calling/Prerecorded Messages Class for each such violation;

F.    An award of allowable court costs in this action;

G.    An award of such other relief as this Court deems just and proper.

**COUNT III**
**Violations of ATDA, 815 ILCS 305/30)**
**(On behalf of Plaintiff and the Members of the ATDA Prerecorded Messages Class)**

115.    All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

116.    Defendant placed numerous calls, placed by an autodialer as defined by the ATDA, to Plaintiff and the ATDA Prerecorded Messages Class Members' cellular phones, and played a prerecorded message without the consent of the Plaintiff or the ATDA Prerecorded Messages Class Members in violation of 815 ILCS 305.

117.    As a result of Defendant's violations of the ATDA, Plaintiff and the members of the ATDA Prerecorded Messages Class are entitled to receive $500.00 in statutory damages for each such violation.

118.    As a result of Defendant's violations of the ATDA, Plaintiff and the members of the ATDA Prerecorded Messages Class are entitled to receive up three times the amount at which actual damages are assessed, plus costs and reasonable attorney fees.

**WHEREFORE**, Plaintiff, on behalf of herself and the members of the ATDA Prerecorded Messages Class, requests the following relief:

A.    An order granting certification of the proposed class, including the designation of Plaintiff as the named representative, and the appointment of counsel of record as Class Counsel;

B.    An order finding that Defendant violated the ATDA;

C.    An order enjoining Defendant from placing or causing to place further violating calls to consumers;

D.    An award of $500.00 in statutory damages to Plaintiff and the members of the ATDA Prerecorded Messages Class for each such violation;

E.    An award of three times that actual damages assessed to Plaintiff and the members of the ATDA Prerecorded Messages Class for each such violation;

F.    An award of reasonable attorneys' fees and court costs in this action;

G.    An award of such other relief as this Court deems just and proper.

**COUNT IV**
**Violations of ATDA, 815 ILCS 305/30)**
**(On behalf of Plaintiff and the Members of the ATDA Cease Calling/Prerecorded Messages Class)**

119.    All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

120.    Defendant placed numerous calls, placed by an autodialer, to Plaintiff and the ATDA Cease Calling/Prerecorded Messages Class's cellular phones, and played a prerecorded message, after Plaintiff and the ATDA Prerecorded Messages Class requested that the calls stop, in violation of 815 ILCS 305.

121.    As a result of Defendant's violations of the ATDA, Plaintiff and the members of the ATDA Cease Calling/Prerecorded Messages Class are entitled to receive $500.00 in statutory damages for each such violation.

122.    As a result of Defendant's violations of the ATDA, Plaintiff and the members of the ATDA Cease Calling/Prerecorded Messages Class are entitled to receive up three times the amount at which actual damages are assessed, plus costs and reasonable attorney fees.

**WHEREFORE**, Plaintiff, on behalf of herself and the members of the ATDA Cease Calling/Prerecorded Messages Class, requests the following relief:

A.    An order granting certification of the proposed class, including the designation of Plaintiff as the named representative, and the appointment of counsel of record as Class Counsel;

B.    An order finding that Defendant violated the ATDA;

C.      An order enjoining Defendant from placing or causing to place further violating calls to consumers;

D.      An award of $500.00 in statutory damages to Plaintiff and the members of the ATDA Cease Calling/Prerecorded Messages Class for each such violation;

E.      An award of three times that actual damages assessed to Plaintiff and the members of the ATDA Cease Calling/Prerecorded Messages Class for each such violation;

F.      An award of reasonable attorneys' fees and court costs in this action;

G.      An award of such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff, individually and on behalf of members of all above Classes, demands a trial by jury of any and all issues in this action so triable of right.

Dated: September 25, 2020

Respectfully submitted,

By: */s/ Majdi Y. Hijazin*
Majdi Y. Hijazin, *Of Counsel*
Sulaiman Law Group, Ltd.
2500 South Highland Avenue
Suite 200
Lombard, Illinois 60148
(630) 575-8181
mhijazin@hijazinlaw.com

*/s/ James C. Vlahakis*
James C. Vlahakis, *Senior Counsel*
Sulaiman Law Group, Ltd.
2500 South Highland Avenue
Suite 200
Lombard, Illinois 60148
(630) 575-8181
jvlahakis@sulaimanlaw.com